**Samuel RICH and Florence Rich, Plaintiffs-Appellants,**

v.

**Julius RICH and Mildred Rich, Defendants-Respondents.**

No. 32147.

St. Louis Court of Appeals. Missouri.

Jan. 18, 1966.

Shepherd & Weenick, Lawrence N. Weenick, Clayton, for plaintiffs-appellants.

Boggiano & Hessel, Meyer Hessel, St. Louis, for defendants-respondents.

BRADY, Commissioner.

This appeal arises from a judgment of the circuit court of St. Louis County rendered in an action tried before the court without a jury wherein the plaintiffs-appellants sought to recover from the defendants-respondents one-half the interest paid by the plaintiffs-appellants on a certain note. The trial court found in favor of the defendants-respondents. The real parties in interest here are Samuel Rich and Julius Rich. We will hereafter refer to the parties by their designation in the trial court except that due to the fact their wives took no part in these proceedings except to sign certain documents as requested by their husbands, we will refer to them in the singular.

The petition alleged that on December 30, 1955, the defendants signed a note for $30,000.00 as joint obligors with plaintiffs; that until May of 1960, these parties paid interest on that note jointly; that after that date the defendants refused to pay interest " * * * on said promisory (sic) note"; and that plaintiffs paid the defendants' " * * * share of the interest of said note * * *" which amounted to $2,000.00. This was the sum for which judgment was prayed plus interest.

The plaintiff and the defendant are not related. They are the principal stockholders in a closely held corporation known as Press Forgings, Inc. In December of 1955 that corporation was indebted to the State Bank of Wellston on a promissory note in the amount of $30,000.00. This loan was secured by collateral put up by both the plaintiff and the defendant. The corporation was then attempting to secure some subcontract work from Lockheed Aircraft Corporation but Lockheed conditioned any agreement with Press Forgings upon an improvement in the latter's financial statement. To effectuate this the parties entered into an arrangement whereby they agreed to remove this note from the financial statement of the corporation. The plan was to pay off the $30,000.00 note of Press Forgings, Inc. by funds raised by a loan on a personal note signed by both of the parties and their wives for the same amount. The defendant's evidence was that it was also agreed that after the contract with Lockheed was completed, Press Forgings, Inc. would reassume the $30,000.00 note and he and Dr. Samuel Rich would be released from primary liability. Plain-

tiffs denied any such agreement. The plaintiff testified that he had been convicted of income tax evasion.

On December 30, 1955, this plan was put into operation and the parties borrowed $30,000.00 which they used to pay off the note of Press Forgings, Inc. As collateral for this loan the plaintiff and the defendant each put up $17,000.00 worth of preferred stock in the corporation. In addition the plaintiff pledged a deed of trust in the amount of $60,000.00. The note of the corporation was returned to it by the bank making the loan. The bank records showed the corporate obligation was marked paid. At the same time Press Forgings, Inc. issued preferred stock in the amount of $30,-000.00 to plaintiff. The evidence was that one-half of the $30,000.00 of preferred stock issued on this decision belonged to defendant and that the parties had a written agreement covering this. This agreement was marked as plaintiff's Exhibit 3 and introduced into evidence. That agreement provided the dividends on this $30,-000.00 of preferred stock were to be equally divided between Julius Rich and Samuel Rich and that " * * * in regards to PRESS FORGINGS, INC., Stock Certificate No. 7, in the amount of 300 shares of Prefferred (sic) Stock issued to DR. SAMUEL M. RICH, is as follows:

"(1) which and when this stock is called for payment by Press Forgings, Inc., the proceeds of the above payment amounting to $30,000.00 will be used to pay off the joint loan of JULIUS RICH and SAMUEL M. RICH at the STATE BANK OF WELLSTON and all collateral belonging to JULIUS RICH and DR. SAMUEL M. RICH, being held by the STATE BANK OF WELLSTON for this loan, will be returned to each party." This note for $30,-000.00 signed by the plaintiff and the defendant was renewed from time to time until December 16, 1960.

The defendant's testimony was that after the corporation had secured the contract with Lockheed, he requested the plaintiff

carry out their agreement to relieve the parties of their personal obligation to the bank. Plaintiff refused to comply and sometime in May of 1960, upon plaintiff's continued refusal, defendant refused to pay any further interest on this note or to sign a renewal note to replace it. Testimony going to the issue of the payment of interest on this note was by the plaintiff who testified that he and the defendant each paid fifty per cent of the interest due on this note and that the interest was paid. The exact question he was asked was: "And was the interest paid on that note?" His answer was: "Yes, sir." There was no other evidence as to the payment of interest on this note. Plaintiff then testified that, upon defendant's continued refusal to sign a renewal note, he and his wife did sign a note to replace the jointly signed note of December 30, 1955.

This new note, signed by the plaintiffs only, was executed on December 16, 1960; the payee and the amount were the same as on the note of December 30, 1955. The plaintiff referred to this note as a "renewal" note. It was accepted by the bank in place of the note signed by all four parties and has been renewed by the plaintiff from time to time. The evidence was that he and his wife have signed new notes in the same amount on at least fourteen different occasions for renewal purposes. The bank records show the note of December 30, 1955, as paid. With reference to the payment of interest on this note the plaintiff was asked the following question and gave the answer shown: "Q During the period of May 1960 until May 1962, can you tell me, Dr. Rich, what the total interest was on that note? A $3,954.22. Q That was the total interest? A Yes. Q Did you pay that interest? A Yes." He later testified that he was seeking half of that amount or $1,977.11.

In appeals of this nature we are to review the record de novo both upon the law and the evidence as in suits of an equitable nature and the judgment is not to be

set aside unless it is clearly erroneous. We are to give due regard to the trial court to judge the credibility of the witnesses. Supreme Court Rule 73.01(d), V.A.M.R.; § 510.310, subd. 4, RSMo 1959, V.A.M.S.

The plaintiffs devote a large portion of their brief to the contention that the original loan of the corporation ceased to be a corporate obligation on December 30, 1955, when it became a personal obligation on the part of the plaintiffs and the defendants. Doubtless their preoccupation with that question springs from some of the language used by the trial court in arriving at its judgment. However that may be, that is not the controlling issue tried nor that presented to this court and, as will appear from the balance of this opinion, a decision on that issue is not required by this appeal.

It should first be noted that there is a clear failure of proof of the allegations of the petition. The plaintiff himself testified the interest on the only note referred to in the petition was paid and was paid equally by these parties. The petition is totally silent as to interest due on any other note forming the basis of all or part of the amount allegedly due plaintiff. However, it is obvious that regardless of what his pleading contained, plaintiff's theory was that the note of December 16, 1960, although signed only by the plaintiff and his wife, was in fact a "renewal" note and replaces the note of December 30, 1955, signed by all the parties. His theory on appeal, although he does not so state in his brief, must be that his pleading was amended by the facts and that the trial court was in error in not awarding him a judgment on this new and not pleaded cause of action. We cannot agree.

■ The defendant never signed the note of December 16, 1960, nor is there any evidence the plaintiff signed that note with authorization from the defendant. In fact, the record is silent as to any knowledge on the part of the defendant that the plaintiff intended to so act. The defendant never indicated in any manner he would be liable on the note of December 16, 1960, for either interest or principal. The plaintiff refers to this note as a "renewal" note but it is obvious from the evidence that this self-serving conclusion has no basis in fact. The plaintiff's act was in fact voluntary and one which substituted an entirely new obligation for that which had previously existed. The substitution of a new obligation cannot be doubted as the payee, the bank, marked its records that the original joint obligation was paid. How then could the defendant be obligated for the payment of any interest due upon the note of another? The plaintiff seeks to answer that question by stating that "* * * [w]hen defendants refused to pay their share of the interest or to renew the note Plaintiffs had to pay the interest and renew the note unilaterally or suffer the loss of their collateral. It may also be added that the payment of the entire interest and the renewal of the note by plaintiffs also protected Defendants' collateral." However, it is clear the plaintiff's main purpose was to protect his own collateral in a manner he thought best. The fact that when he did so he also incidentally and without any authorization protected the defendant's collateral does not create any right on his part to recover in this action. It may well have been that the defendant did not want his collateral protected in this manner, or indeed, in any manner. To the contrary, since he was attempting to get the plaintiff to perform under their oral agreement to remove their personal liability, defendant may have wanted the bank to proceed against the collateral as a means of forcing the plaintiff to comply with that agreement. In any event, it is clear that the plaintiff had a choice in December of 1960. He could have allowed the bank to proceed to collect the joint obligation by use of the collateral or in whatever method it wished. The defendant never indicated he did not wish this done nor did he ever request the plaintiff to act so as to prevent it being done. The defendant may well have had

other funds or have made arrangements for them with which he intended to pay his share of this indebtedness had the bank proceeded to collect the note. There is no way for us to know nor was that information available to the plaintiff. What is apparent is that the plaintiff did not want the bank to proceed in such a manner and so, without any notice to or authorization from or consultation with the defendant, exercised another choice and substituted his own note for that of both parties. Upon doing so the payee marked its records that the jointly signed note of December 30, 1955, was paid. Under these circumstances plaintiff cannot now require the defendant to pay half of the interest on plaintiff's note.

■ It should be noted also that even if this court could, by stretching liberality in construing plaintiff's evidence and theory on appeal to the absolute limit, consider that by his proof plaintiff had converted his pleaded cause of action into one where he was seeking payment for one-half the interest paid on the note of December 30, 1955, and on that note alone, the trial court still was not in error in entering its judgment for the defendant. This for the reason that this record is remarkably silent as to the interest paid on that note from the date the plaintiff and defendant last made a joint interest payment until December 16, 1960, when the substitution of the plaintiff's note took place and the jointly signed note was marked paid on the payee's records. There is no direct evidence on that issue. Neither is there sufficient evidence from which the interest can be calculated. By reference to the note itself, plaintiff's Exhibit 4, the rate of interest charged can be discovered. In addition, we know from the evidence as to the bank records when it was paid off, December 16, 1960. The missing and necessary information is exactly when the last interest was paid jointly by these parties. All we know is that sometime in May of 1960 defendant refused to pay the interest. We cannot calculate the interest due as the number of days it was due is unknown. There are no notations on the exhibit showing payments of interest or amounts of interest due after February 29, 1956. Moreover, the plaintiff himself clearly testified that the interest on this note was paid jointly and equally by these parties.

■ The theme running throughout plaintiff's brief is that the trial court should not have believed the defendant's evidence as to the oral agreement to render the parties liable after the Lockheed contract was secured. The plaintiff relies heavily upon Exhibit 3, the agreement between the parties as to the preferred stock, and argues that the existence of this agreement disproves defendant's evidence on this matter. Again we cannot agree. All Exhibit 3 provides with respect to this issue is that when the preferred stock is called, the proceeds therefrom are to be used to pay off the loan which the parties made in order to secure the Lockheed contract. The defendant does not deny that but the effect of his testimony was that there was also an agreement between these parties that plaintiff would join the defendant in making some kind of arrangements whereby they would be released from their personal liability after the Lockheed contract was secured. Whether this was to be accomplished by the calling of this preferred stock or by some other means is another matter. Earlier in this opinion we have set out the rules of review in cases of this nature and therein we are admonished to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. We do not think that the provisions of Exhibit 3 are such as to require the trial court to disregard the defendant's evidence on this issue. Certainly, the evidence of plaintiff's conviction was a matter the trial court could properly take into account when deciding whose evidence to believe.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.